**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
|  | § |  |
| In Re: | § |  |
| SILICA PRODUCTS LIABILITY | § | MDL Docket No. 1553 |
| LITIGATION | § |  |
|  | § |  |

## ORDER NO. 42

On August 11, 2006, this Court held a telephone conference in the above-styled action.  This Order memorializes the rulings made by the Court at the conference.

In Order No. 31, this Court ordered the parties to conduct an inventory of all the X-Rays produced by the parties in this litigation and file an indexed list of the X-Rays with the Court. (D.E. 1965, ¶ 13.)  On September 29, 2005, the parties completed the inventory and filed the indexed list under seal.  (D.E. 2000.) At the next status conference, this Court granted Plaintiffs' motion to transfer the X-Rays from the Watts Law Firm to the Omni Litigation Support Services ("Omni") warehouse in Corpus Christi, Texas.  (D.E. 2040, ¶ 4.)  In granting the motion to transfer, the Court specifically noted:

> This Court will . . . retain jurisdiction over the
> document depository. . . . All attorneys and parties
> previously allowed access to the document depository will
> retain such access.   Any parties not previously
> authorized to access the depository must first file a
> motion with this Court requesting access.

(D.E. 2040, ¶ 4.)

On June 23, 2006, four armed investigators from the Office of the Attorney General of the State of Texas ("Texas Attorney General") arrived at the Omni warehouse with a Harris County Grand Jury subpoena for the X-Rays and other documents.  (See D.E. 2066 ¶¶ 3-4.)  The investigators told Omni's representative, Mr. Gary Cosgrove, that he was to turn over the original X-Rays and other documents, and threatened to have him arrested if he failed to comply with the subpoena.  (D.E. 2066, ¶¶ 4-5.)  The investigators then removed the X-Rays from the depository and transported them to Austin, Texas.  (D.E. 2066, ¶ 5; D.E. 2071, ¶ 5.)

The Texas Attorney General failed to request permission from this Court to access the documents as required.  (See D.E. 2040, ¶ 4.)  The Court only learned of the unauthorized removal of the X-Rays on July 5, 2006, when an Omni representative informed the Court's staff that the Texas Attorney General intended to take possession of the remaining thousands of documents in the depository.  The Court then immediately ordered the Texas Attorney General to return all materials to the Omni depository, an estimated 10,000 X-Rays.  On July 6, 2006, the Texas Attorney General returned documents to the Omni warehouse.  (D.E. 2070, 2071, 2072.)

The Office of the Texas Attorney General's disregard of this Court's orders may demonstrate an unfamiliarity with the United

-2-

States Constitution.  The Office of the Texas Attorney General was aware of on-going investigations concerning silicosis litigation by the United States Congress, the United States Department of Justice, and a grand jury in the Southern District of New York. The Office of the Texas Attorney General was also aware that this Court had specifically retained jurisdiction over all documents in the depository, including the X-Rays, and that any person requesting access to the documents must file a motion with this Court. (D.E. 2040, ¶ 4).  It also should have been apparent to the Texas Attorney General that there would not have been a document depository at all had this Court not retained jurisdiction over the documents.

The actions of the Texas Attorney General are problematic.  As both the Supreme Court, the Fifth Circuit and other circuits have recognized:

> If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.

Albuquerque Nat'l Bank v. Citizens Nat'l Bank in Abilene, 212 F.2d 943, 949 (5th Cir. 1954) (quoting Palmer v. State of Texas, 212 U.S. 118, 125 (1909)); see also Atlanta Flooring & Insulation Co. v. Russell, 145 F.2d 493, 495 (5th Cir. 1944) (stating that "when a court of competent jurisdiction in appropriate proceedings has

-3-

taken possession of property, all other courts are powerless to disturb that possession"); <u>In re Liberatore</u>; 574 F.2d 78, 88-89 (2d Cir. 1978) ("It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is unless there is some provision to the contrary exclusive in effect until it has wrought its function"). Where property first comes under the jurisdiction and control of a federal court, "there [i]s no authority . . . under the process of the State court, to interfere with it . . . for this would produce a conflict extremely embarrassing to the administration of justice." <u>Freeman v. Howe</u>, 65 U.S. 450, 457-58 (1860). The reason that a state's process cannot be used to interfere with property within the jurisdiction of the federal court is apparent:

> [State and federal courts] do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that [property] is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void.

<u>United States v. Alpine Land & Reservoir Co.</u>, 174 F.3d 1007, 1013 (9th Cir. 1999) (quoting <u>Kline v. Burke Const. Co.</u>, 260 U.S. 226, 229-30 (1922) and <u>Covell v. Heyman</u>, 111 U.S. 176, 182 (1884)).

Moreover, courts have held that the Supremacy Clause of the United States Constitution bars states from interfering with a Federal Court's jurisdiction. See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 180 n. 1 (1988) (stating that the Supremacy Clause "immunizes the activities of the Federal Government from state interference"); United States v. Black, 622 F.Supp. 669, 672 (W.D. Pa. 1985) ("The Supremacy Clause clearly prohibits a state legislature as well as the state judiciary from acts of interference with the jurisdiction or procedure of the Federal District Courts"); Abraham v. Hodges, 255 F.Supp.2d 539, 550 (D. S.C. 2002) ("It is well-established that a state cannot interfere with a valid exercise of federal authority"); United States v. Kaufman, 980 F.Supp. 1247, 1251 (S.D. Fla. 1997) ("judicial power that is derived from the Constitution of the United States is wholly independent of state action, and . . . states may not directly or indirectly destroy, abridge, limit or render it inefficacious"); see also U.S. CONST. Art. VI, § 2. Thus, the Texas Attorney General had no authority, even if sanctioned by a Texas state court, to remove documents from the Omni document depository without the permission of this Court.

After the Texas Attorney General removed and returned X-Rays, this Court ordered Omni to conduct a re-inventory of the X-Rays that were returned to the depository, matching the returned X-Rays

against the original X-Ray index that had been previously prepared and filed by the parties.  At the August 11, 2006, telephone conference, Omni informed the Court that it had concluded its inventory and discovered that 152 X-Rays were missing.   (See Transcript[1] at  4.)  In light of the foregoing, this Court ORDERS as follows:

1.   Omni shall prepare and file with the Court an accounting of the costs incurred in conducting the inventory of the X-Rays that were returned to the depository by the Texas Attorney General.  The Court may order the Texas Attorney General to reimburse Omni for the costs of conducting the inventory.

2.   The Texas Attorney General shall prepare and file with the Court an affidavit containing the following information:  (1) The name of every person who had contact with any of the documents from the depository; (2) the name of every person who had access to the room where the documents from the depository were kept (including all persons who had keys to that room); and (3) a detailed description of how access to the documents from the depository was controlled by the Texas Attorney General.

---

[1] "Tr" refers to the transcript of the August 11, 2006 telephone conference, filed at D.E. 2077.

3.    The Texas Attorney General shall provide the name of the individual or individuals who made or participated in the decision to transport the documents from the depository in Corpus Christi, Texas to the Texas Attorney General's Office.

4.    Defendants' liaison counsel shall notify the U.S. Attorney's Office for the Southern District of New York, the United States Department of Justice, and the Congressional Oversight and Investigations Subcommittee headed by Representative Joe Barton of the situation regarding the Texas Attorney General's removal of the documents from the depository, including the information that 152 X-Rays appear to be missing.

5.    Plaintiffs' and Defendants' liaison counsel shall determine the names of the plaintiffs whose X-Rays are missing, file the list of names, under seal, with the Court, and contact counsel for those plaintiffs.

6.    Interested parties may proceed with discovery they deem necessary to determine who in the Texas Attorney General's Office had access to any of the documents from the depository.

SIGNED and ENTERED this 22nd day of August, 2006.

_____
          Janis Graham Jack
     United States District Judge

–7–